NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   23-10030 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 2:21-cr-00301-SMB-1 2:21-cr-00301-SMB |
| EMMETT JOHN MIGUEL, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted July 11, 2024
San Francisco, California

Before:  HIGGINSON,[**] MENDOZA, and DESAI, Circuit Judges.

Emmett Miguel appeals his convictions for aggravated sexual abuse and

abusive sexual contact. Miguel was accused of raping G.H. during a dance on the

Gila River Indian Community in January 2012. Nine months after the rape, G.H.

gave birth to a child. G.H. first disclosed the rape to her boyfriend, Zachary Justin,

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

several years later in 2019. At Justin's urging, G.H. reported the rape to authorities, and an investigation followed.

When investigators located Miguel, he acknowledged that he knew G.H. but denied having any sexual contact with her. Miguel voluntarily consented to a DNA swab, and DNA testing revealed that Miguel is the father of G.H.'s child. Investigators also interviewed Justin, who told investigators that he had "heard different stories" and "was thinking maybe it was just a relationship gone bad." Justin asked at one point, "do you guys do polygraph tests?" When the investigator responded yes, Justin said, "you should probably do one."

Miguel proceeded to trial. At the first trial, the government called Justin, and Miguel elicited the polygraph-related statements on cross examination. The first trial resulted in a mistrial because the jury could not reach a unanimous verdict. Before the second trial, the government moved to exclude Justin's statements to the investigator about polygraphs, and the court granted the motion. Although Justin's statements to the investigator about the polygraphs were excluded at the second trial, the defense called Justin and elicited statements that he had heard "different stories," but Justin explained that he did not mean different stories related to this incident. The jury found Miguel guilty on both counts.

Miguel challenges the district court's denial of his Rule 29 motion for judgment of acquittal at the conclusion of both trials. Relatedly, he argues that the

2

second trial violated double jeopardy because the district court erroneously denied the Rule 29 motion in the first trial. He also challenges the district court's ruling excluding Justin's statements about polygraphs on Rule 403 and Confrontation Clause grounds. Lastly, he challenges the jury instruction related to the expert witnesses and the procedural and substantive reasonableness of his supervised release conditions.

When a defendant does not renew his Rule 29 motion at the close of all evidence, we review for plain error. *See United States v. Phillips*, 704 F.3d 754, 762 (9th Cir. 2012); *United States v. Lopez*, 4 F.4th 706, 719 (9th Cir. 2021). We review the district court's evidentiary rulings for abuse of discretion. *United States v. Hankey*, 203 F.3d 1160, 1166 (9th Cir. 2000). We have jurisdiction under 28 U.S.C. § 1291. We vacate the conviction.

1.     We do not address whether a defendant can raise a double jeopardy challenge based on the sufficiency of the evidence in his first trial, when the second trial results in a conviction. This is an open question in our circuit, *see United States v. Recio*, 371 F.3d 1093, 1108 (9th Cir. 2004), but we do not reach it because substantial evidence supported the verdict in both trials. Viewing the evidence in the light most favorable to the government, *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc), G.H.'s testimony alone could support the jury's verdict, *see United States v. Archdale*, 229 F.3d 861, 867 (9th Cir. 2000) (rejecting

an insufficiency challenge because "[i]t [was] clear that if defendant engaged in the activities described by the victim in her testimony he committed the crimes charged," and it was "for the jury to determine" the victim's credibility). And G.H.'s testimony was also corroborated by other independent evidence, including the DNA results confirming that Miguel is A.H.'s father and Miguel's statements that he attended a dance at the same time and place of the alleged rape. Miguel points to several inconsistencies in G.H.'s testimony, but assessing G.H.'s credibility is a task left to the jury. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam) ("A jury's credibility determinations are . . . entitled to near-total deference under *Jackson* [*v. Virginia*, 443 U.S. 307 (1979)]."). Thus, the district court did not plainly err by denying Miguel's Rule 29 motion in either trial.

2.      The district court abused its discretion by excluding Justin's polygraph-related statements.[1] Under Rule 403, the risk of unfair prejudice or confusing the issues must "substantially outweigh[]" the probative value of the evidence. Fed. R.

---

[1]      Miguel preserved this objection below. The government argues that he did not make a sufficient offer of proof, but he offered two bases for the admissibility of the statements—namely, as impeachment evidence and through the state of mind hearsay exception. And the district court permitted defense counsel—over the government's hearsay objection—to impeach Justin using prior inconsistent statements about the "different stories" he had heard. Additionally, Miguel did not challenge the evidentiary ruling until his reply brief, which would ordinarily constitute waiver. *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam). But "we may consider [the argument] if, as here, the appellee raised the issue in its brief." *Id.*

4

Evid. 403. Justin's polygraph-related statements are relevant because they called into question Justin's credibility on whether he harbored doubts *specifically* about G.H.'s story, and G.H.'s credibility in turn was at the core of Miguel's conviction. In other words, the statements (a) had a tendency to make a fact—here, that G.H. had told him inconsistent stories about the rape—more probable than it would be without the evidence, and (b) that fact is of consequence in determining whether G.H.—the only witness with firsthand knowledge of the rape—was telling the truth. *See* Fed. R. Evid. 401. The government fails to demonstrate how the relevance of the testimony is *substantially* outweighed by any risk of confusion or misleading the jury. Although the government points to cases expressing skepticism over the *use* of polygraphs due to their unreliability, *see, e.g.*, *United States v. Scheffer*, 523 U.S. 303, 309 (1998) ("[T]here is simply no consensus that polygraph evidence is reliable."), this case does not involve the use of polygraph evidence. And the government offers no authority to show that the *mere mention* of a polygraph would confuse the jury, nor does it explain why a limiting instruction would fail to address that purported confusion. In light of Justin's repeated testimony that G.H. told only consistent stories about the rape, the relevance of Justin asking Detective Rivers whether the police do polygraph tests and telling the detective "you should probably do one" was not substantially outweighed by the risk of misleading the jury.

The error was not harmless. Justin's credibility—and interrelatedly, G.H.'s

5

credibility—was at the heart of the defense's theory of the case. In the first trial, when the defense was permitted to elicit the polygraph-related question and statement, Miguel relied heavily on the statements in closing to undercut Justin's and G.H.'s credibility. In the second trial, Miguel was not permitted to highlight the extent to which Justin may have had doubts about G.H.'s story, and in turn, the government insisted that Justin heard only consistent stories from G.H. Unlike the first trial, the second trial resulted in a conviction. Given the centrality of G.H.'s credibility to the trial, we cannot conclude that "it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." *Archdale*, 229 F.3d at 865 (quoting *United States v. Lui*, 941 F.2d 844, 848 (9th Cir. 1991)). The district court thus reversibly erred by excluding Justin's polygraph-related question and statement.[2]

**VACATED and REMANDED.**[3]

---

[2] Because the Rule 403 error requires vacating Miguel's conviction and remanding for further proceedings, we do not reach the remaining issues on appeal, namely Miguel's Confrontation Clause challenge, his challenge to the jury instructions, or his sentencing-related challenges.

[3] The parties' stipulated motion to supplement the record on appeal is GRANTED. Dkt. 18.